# E.J. ELLIOTT ET AL. *v.* SOUTH ISLE FOOD CORPORATION
## (3613)
## (3635)
## (3636)

DUPONT, C. J., BORDEN and DALY, Js.

Submitted on briefs December 13, 1985—decision released March 11, 1986

*Richard A. Johnson* filed a brief for the appellant (defendant in each case).

*John G. Betar, Jr., David Quatrella* and *Donald Pinto,* law student intern, filed a brief for the appellees (plaintiffs in each case).

BORDEN, J. The defendant lessee appeals from three judgments rendered in favor of the plaintiff lessors in three summary process actions which were brought pursuant to General Statutes § 47a-23. These actions involve one lease for the use and occupancy of three properties. Two of these actions (the Bridgeport cases) were initiated in the Housing Session at Bridgeport in the judicial district of Fairfield, and judgments were rendered by *Driscoll, J.* The other action was brought to geographical area number three at Danbury (the Danbury case), and judgment was rendered by *Lavery, J.*

The principal issue in these appeals is whether the trial courts erred in failing to find that the defendant's violations under the lease were technical and that the literal enforcement of the lease would result in an inequitable forfeiture. The defendant also assigns as error in the Bridgeport cases the trial court's refusal to grant its posttrial motion to present additional evidence. In the Danbury case, the defendant assigns as error the trial court's refusal to grant its motion to vacate the judgment and to dismiss the action. We find no error.

Certain facts, which are common to these three actions, are not in dispute. The two parcels of property which are the subject of the Bridgeport cases are located in Southport and Stratford. The property which is the subject of the Danbury case is located in Danbury. The plaintiffs are two individuals who own the Danbury and Stratford properties and lease the Southport property. The defendant is an Ohio corporation which holds certain franchise rights from Wendy's

International, Inc., and presently owns and operates two Wendy's restaurants in Connecticut.

On March 5, 1983, the parties entered into a written agreement whereby the defendant leased these properties from the plaintiffs. Although separate leases were executed for each of the three sites, the agreement recites that it constitutes a "package deal." According to the agreement, a default as to a provision in any one of the leases would constitute a default as to the entire agreement, namely, all of the leases. In addition, paragraph twenty-four, which governs default, provides that the lessor may terminate the lease if the lessee fails to pay rent when due or fails to keep and perform any other covenant in the lease, provided that the lessor shall give certain notice to the lessee specifying the default. The defendant took possession of the properties pursuant to the leases and has remained in possession.

In July, 1984, the plaintiffs issued notices to quit and initiated three summary process actions against the defendant. In their complaints the plaintiffs alleged, inter alia, that the defendant had breached the following covenants in the lease: (1) the covenant to remove, within thirty days, any mechanic's liens which the defendant caused to be filed against the leasehold property; (2) the covenant to maintain insurance coverage on the leasehold property; and (3) the covenant to pay an increased rental if the defendant defaulted on its rental obligations three times during any one year period. The defendant filed an answer admitting that mechanic's liens had been filed and not removed, and that increased rent had not been paid, but denied that they received proper notice from the plaintiffs regarding the rent increase. The defendant denied that the insurance had not been paid and filed a special defense alleging that the violations of the lease are technical,

that the loss to the lessors has been small, and that the hardship to the lessee from literal enforcement of the lease will be enormous and irrevocable.

In the Bridgeport cases, the parties went to trial and judgment was rendered in favor of the plaintiffs. In the Danbury case, the parties entered into a stipulation prior to trial, the terms of which constitute the primary aspects of the court's judgment for the plaintiffs which is now challenged on appeal. Because of the differences in the factual situations underlying these judgments, we discuss the cases separately.

I

THE BRIDGEPORT CASES

With regard to the covenant to remove mechanic's liens, the trial court found that mechanic's liens had been filed against the plaintiffs' property in the amount of either $176,000 or $250,000. The court also found that the defendant permitted these liens to remain on the premises in violation of the terms of the lease. With regard to the covenant to maintain insurance on the properties, the trial court found that the defendant had allowed the insurance to lapse. The court rejected as unproven the defendant's claim that it had notified the plaintiffs regarding the continuation of insurance. Finally, with regard to the covenant to pay increased rent, the trial court found that the rental increase had not been paid, and rejected as unsubstantiated the defendant's claim that this default was due to defects in the plaintiffs' notices regarding the increase. In addition, the court found that the defendant did not respond to the plaintiffs' notices of default and did not claim at trial that any of the notices had not been received. Therefore, the trial court found that pursuant to paragraph twenty-four of the lease, the plaintiffs were entitled to terminate the lease and issue notices to quit possession of the premises.

The court also found that the notices to quit conformed substantially to the statutory requirements. Accordingly, the court rendered judgments for the plaintiffs to recover possession of the premises. See General Statutes § 47a-26d. Because the defendant on this appeal does not challenge the trial court's findings regarding the alleged defaults, notices of default, or notices to quit possession of the premises, the focus of this appeal concerns the equitable doctrine of forfeiture, which was the defendant's principal defense at trial.

"The rule regarding equitable relief from the forfeiture of a lease is that 'in cases of wilful or gross negligence in failing to fulfil a condition precedent of a lease, equity will never relieve. But in case of mere neglect in fulfilling a condition precedent of a lease, which does not fall within accident or mistake, equity will relieve when the delay has been slight, the loss to the lessor small, and when not to grant relief would result in such hardship to the tenant as to make it unconscionable to enforce literally the condition precedent of the lease.' " (Citations omitted.) *Seven Fifty Main Street Associates* v. *Spector,* 5 Conn. App. 170, 174, 497 A.2d 96 (1985). In reviewing claims of error in the trial court's exercise of discretion in matters of equity, we give great weight to the trial court's decision. Id. "[E]very reasonable presumption should be given in favor of its correctness. *Rokus* v. *Bridgeport,* 191 Conn. 62, 72, 463 A.2d 252 (1983). The ultimate issue is whether the court could reasonably conclude as it did. *Jacobsen* v. *Jacobsen,* 177 Conn. 259, 263, 413 A.2d 854 (1979)." *Seven Fifty Main Street Associates* v. *Spector,* supra.

In the present case, the defendant essentially concedes that the extent of its breaches and the resultant loss to the plaintiffs would appear to be more than slight. Nevertheless, the defendant asserts that when these losses are measured against the magnitude of this

entire deal, the breaches and the plaintiffs' losses were minor. In addition, the defendant contends that, because there was no evidence of monetary harm to the plaintiffs resulting from the mechanic's liens, any harm caused by the defendant's breaches was negligible. Similarly, as to the failure to pay rent, the defendant argues that the amount due was minimal and that the base rent had been paid through the time of trial. Finally, the defendant points out that there was no evidence regarding the amount that the plaintiffs may have paid for substitute insurance coverage. Thus, the defendant implies that the harm to the plaintiffs was either unproven or negligible.

On the other hand, the plaintiffs point out that there were three mechanic's liens filed against one of the properties which total at least $176,000, and that one of the lienholders had instituted a foreclosure action on the plaintiffs' property which was still pending at the commencement of the trial in this case. The plaintiffs also point out that the trial court found that these liens were substantial and that the defendant's failure to remove these liens indicates either an inability or an unwillingness to do so. In this regard, the trial court specifically noted the testimony of the defendant's chief operating officer that the defendant had not experienced money problems. The court also found that the defendant permitted the liens to remain on the property even after receiving notice from the plaintiffs regarding this default. The record clearly indicates that the liens were placed on the property in January of 1984, and six months later the defendant admitted the existence of these liens in its answer. Thus, the court specifically considered the defendant's delay in remedying this default and correctly found it to be more than slight.

These findings indicate that the trial court could have correctly viewed this case as an example of at least bor-

derline "wilful or gross negligence in failing to fulfil [conditions] precedent of a lease, [where] equity will never intervene." *Seven Fifty Main Street Associates* v. *Spector*, supra. Nevertheless, the court considered the third equitable factor, namely, the extent of the loss to the defendant if forfeiture were granted. The court noted that the defendant, which admittedly had no money problems, had failed to complete construction on one of the properties and had not even commenced construction on the other two. Although the defendant claims on appeal to have invested substantial sums in these properties, we agree with the plaintiffs that these were, by and large, merely "soft costs" rather than costs of construction or renovation as alleged. In addition, we disagree with the defendant's unsupported claim that the potential loss to the plaintiffs is slight, whether that loss is measured by the size of this entire deal or otherwise. We conclude that the record does not support the defendant's claim that the trial court abused its discretion by rendering judgment of forfeiture of this lease based on these facts and circumstances.

The defendant's second claim of error is that the trial court erroneously denied its motion to present additional evidence. We disagree.

The defendant made this motion shortly after the trial had ended but before the court had rendered its decision. The motion essentially sought the court's permission to introduce evidence that the mechanic's liens had been released. In its memorandum of decision denying this motion, the trial court noted that all the evidence which the defendant sought to introduce concerned matters which it had ample opportunity to have accomplished before the end of the trial. Indeed, the court noted that notwithstanding the fact that several breaches had occurred, the defendant's motion merely sought to introduce evidence concerning the

alleged remedy of only one of those breaches. Accordingly, the court denied the motion.

We conclude that it was well within the trial court's discretion to deny the motion.

## II

### THE DANBURY CASE

The facts giving rise to the plaintiffs' initiation of this summary process action are identical to those discussed above. In this case, however, before trial the parties entered into an agreement whereby a stipulated judgment of possession was rendered in favor of the plaintiffs on September 6, 1984. This judgment, according to the stipulation, was to be stayed until September 20, 1984, and vacated if the defendant, by that date, had paid the mechanic's liens in full. The stipulation also required the defendant to give the plaintiffs a written statement verifying the payment of these liens. On September 20, 1984, these conditions had not been complied with. Therefore, judgment for the plaintiffs became fully effective as of that date. On October 1, 1984, the defendant filed a motion to vacate the judgment, alleging that it had fully complied with the conditions set forth above. The trial court denied the motion after a hearing on October 4, 1984. The defendant claims that the trial court's refusal to vacate judgment constitutes reversible error. We disagree.

We construe the defendant's motion as a motion to open the judgment pursuant to Practice Book § 326. A timely motion to open judgment is directed to the trial court's discretion. *Manchester State Bank* v. *Reale,* 172 Conn. 520, 523–24, 375 A.2d 1009 (1977); *Banks* v. *Evans,* 6 Conn. App. 175, 179, 504 A.2d 522 (1986). At the hearing on this motion, the trial court noted that the September 20 deadline was "a final date . . . the dead-line date," and that the defendant had neither

fully, nor substantially complied with the stipulation. Accordingly, the trial court, in the exercise of its discretion, denied the defendant's motion. We find no abuse of that discretion under the facts and circumstances of this case.

There is no error.

In this opinion the other judges concurred.